## JAMES ROBERT MASON *v.* STATE OF MARYLAND

[No. 216, September Term, 1969.]

*Decided January 28, 1970.*

580

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*James C. Cawood, Jr.,* for appellant.

*T. Joseph Touhey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Julian B. Stevens, Jr., State's Attorney for Anne Arundel County,* and *T. Joseph Touhey, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellant was convicted on May 28, 1968 by the court sitting without a jury of storehouse breaking and grand larceny and sentenced to five years under the jurisdiction of the Department of Correction. He contends on this appeal that certain actions of the prosecutor at the trial were such as denied him "fundamental fairness."

The evidence showed that Stevens, Inc., a hardware concern in Annapolis, was broken into at approximately 11:55 p.m. on September 29, 1967 and a television set valued at $139.95 was stolen from the display window. Oliver Miller testified for the State that he was about 100 yards from the store when he heard glass breaking and immediately thereafter saw two Negro men running away from the store. Miller went to the store where he saw that one of the two men he had just seen running was still in the area. He observed this man remove his jacket, which he described as light in color, "yellow, beige or white," and give it to another man, who then left. Miller admitted that he did not see the face of the man who took off the jacket but that this man was shortly thereafter arrested by the police. Miller admitted on cross-examination that he could not identify appellant as either the man whom he saw taking off the jacket, or as

one of the men he had seen running from the scene of the crime.

Leo Pratt testified that he was in his boat about 150 feet from the Stevens store when he heard a "terrific crash" followed by a shout that "somebody just busted into Stevens." Pratt said that he saw two men running from the area, one of whom was carrying a television set, which he abandoned on the street; that one of the two men was wearing a yellow jacket and a brown beret and ran into a bar near the store. Pratt testified that he ran over toward the bar and observed the man who had entered the bar taking off his jacket with the help of several other persons; that Officer Adrian Joy of the Annapolis Police Department came on the scene at this time and he, Pratt, pointed out appellant as the man he had earlier observed enter the bar; that his identification was based on his recognition of appellant as one of the two men whom he had seen running from the store, including the fact that appellant was still wearing the brown beret hat.

Officer Joy testified that he arrested appellant after Pratt told him of appellant's involvement in the crime. Officer Jessie Clark testified that he recovered the yellow jacket from a stool inside the bar. He stated that there were approximately 15 or 20 people in the bar at that time. Clark testified that he found a pack of Pall Mall cigarettes and a pair of sunglasses inside the jacket. On inquiry by Clark at the scene of the offense, appellant denied ownership of the jacket or its contents.

Appellant testified that he had been drinking in the bar, and when he came out, somebody pointed his finger at him and said "that's him." Appellant testified he was then arrested. Appellant denied breaking into the store or having owned or worn the yellow jacket.

On cross-examination of appellant, the prosecutor asked him to remove the coat he was then wearing and try on the yellow jacket, which had previously been introduced in evidence as State's Exhibit 3. Although not clear from the record it appears that while appellant was

trying on State's Exhibit 3, the prosecutor was holding appellant's coat and removed a pair of sunglasses therefrom and replaced them with another pair of sunglasses. This accomplished, the prosecutor returned appellant's own coat to him and took back State's Exhibit 3 — the yellow jacket. The prosecutor then asked appellant if he had a pair of sunglasses with him in court and, if so, would he please put them on. The appellant reached into his coat, took a pair of sunglasses therefrom, and put them on, at which point the prosecutor arose and, referring to the sunglasses which the appellant had just put on, stated: "Let the record indicate that these are the sunglasses that were removed from the yellow coat." Appellant objected but the trial judge stated that while he had observed appellant take the sunglasses from his own coat, "I think * * * [the prosecutor] put them in when he was holding his coat." The prosecutor then exhibited to the court "the glasses that he removed" from appellant's coat, and offered them in evidence as State's Exhibit 4. They were admitted over appellant's objection.

The sunglasses found in the yellow coat by Officer Clark were neither offered nor received in evidence as part of State's Exhibit 3, the yellow jacket. While the prosecutor stated that he removed the glasses from the yellow coat, his statement, unsworn, hardly takes the place of evidence of that fact. The record does not indicate that the trial judge saw the prosecutor remove the glasses from the yellow jacket; at most, it indicates that the trial judge thought he observed the prosecutor place a pair of sunglasses in appellant's own coat while he (the prosecutor) was holding it. Neither did the appellant nor his trial counsel observe the alleged substitution, the Attorney General, with commendable candor, having admitted during oral argument of the case before us that the prosecutor intentionally blocked the appellant's line of vision and that of his counsel in order to make an undetected transfer of the sunglasses. Under these circumstances, only the prosecutor knew the meaning of what he was doing—he brought the props, made the substitu-

tion in secret, and then triumphantly announced to the court that he had been successful in having appellant acknowledge ownership of a pair of sunglasses which he, and he alone, said were those found in the pocket of the incriminating yellow jacket. That evidence cannot be introduced by prosecutorial fiat is clear; that shenanigans such as here occurred do violence to the right of persons accused of crime to a fair trial is equally clear. There being no proper evidentiary foundation establishing that the sunglasses were those found in and/or removed from the yellow jacket, it was obvious error for the trial judge to have received them in evidence as State's Exhibit 4 over appellant's objection.

The error was not harmless. The State's case was based on the eyewitness identification of Pratt, supported in some degree by the testimony of Miller. Appellant's defense was that he was a victim of mistaken identification. The yellow jacket was highly incriminating. When the appellant unwittingly acknowledged ownership of the sunglasses allegedly found in the yellow jacket, his defense was totally destroyed and his guilt posited virtually as a fact.

*Judgment reversed; case remanded for a new trial.*